UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ELAINE ROMERO, No. 19-10877-t7

    Debtor.

GREG CHAVEZ,

    Plaintiff,

v. Adv. No. 19-1062-t

ELAINE ROMERO,

    Defendant.

## **OPINION**

    Before the Court is plaintiff's complaint to declare his state court judgment against defendant nondischargeable under 11 U.S.C. § 523(a)(6).[1] Defendant counters that the property damage upon which the judgment is based was not her fault, and also that the judgment varies significantly from the judge's oral findings. After a trial on the merits, the Court concludes that defendant, acting in concert with her boyfriend, willfully and maliciously damaged Plaintiff's rental house. The state court judgment debt based on that damage is nondischargeable.

---

[1] All statutory references are to 11 U.S.C. unless otherwise indicated.

I.  FACTS[2]

The Court finds:[3]

Defendant Elaine Romero is an educator. She has had a number of jobs in different New Mexico public schools. When she rented Plaintiff Greg Chavez's house at issue, Romero had just gotten a job as the superintendent of the Mesa Vista consolidated schools, located in Northern New Mexico near the small town of Ojo Caliente. The job required her to live in the school district.

Chavez is a research engineer scientist at Los Alamos National Laboratory. He lives in Santa Fe, New Mexico, but owns a house in Ohkay Owingeh, New Mexico (near Española). Apparently the house is in the Mesa Vista school district. Chavez built the house, which he now rents on a short-term basis to tenants found through services such as Airbnb and the like.

Romero found out about the house and asked Chavez about it. She was looking for temporary housing until she could find a permanent residence in the school district. On January 26, 2018, Chavez and Romero signed a rental agreement. The lease term was from January 27, 2018, through April 2, 2018, a little over two months. The termination date appears to have been chosen because Chavez had already rented the house through Airbnb to another tenant from April 4–7, 2018.

Paragraph 10 of the rental agreement provides "Tenant agrees to rental of the First floor of the residence only. The Landlord shall enjoy the use of the Second Floor of the property."

Rent was $1,500 a month, due on the 8th of the month. Chavez could terminate the agreement on 14 days written/emailed notice for non-payment of rent. Though the rental

---

[2] Some of the Court's findings are in the discussion section below.
[3] The Court took judicial notice of the docket in the main case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

agreement was only between Chavez and Romero, Anthony Lujan, Romero's boyfriend, spent a considerable amount of time at the house.

As the April 2, 2018, termination date approached, Romero asked if she could renew the lease after the Airbnb tenants left. Chavez agreed to let her move back after April 7, 2018.[4] Chavez also gave Romero permission to store her belongings on the second floor while the Airbnb renters occupied the first floor.

Romero temporarily moved out as agreed on April 2, 2018. The next day Chavez and a helper cleaned the house in preparation for the Airbnb renters. Chavez and his helper were not happy with how Romero left the first floor—they thought it was unacceptably dirty.

The house has a jacuzzi tub on the second floor. As part of the work he did on April 3, Chavez checked the jacuzzi and made sure the water to it was shut off. Chavez cleaned again after the Airbnb renters left on April 7. Again, Chavez checked that the water to the jacuzzi was shut off.

Romero retook possession of the first floor on April 8, 2018. She only paid $1,000 of the $1,500 rent she owed, however. That morning the parties exchanged text messages about the rent and the condition of the house. The messages began on a fairly cordial note, but Romero's texts became decidedly unfriendly, ending with:

> Your life must be worse that I thought . . . sorry to hear, you seem like a nice guy,

and

> Is that why you asked when my next check was? Hoping to keep my belongings?
> Yup, you're life must be worse than I thought. God bless.

---

[4] Parties did not sign a new lease agreement, but the state court found that the terms of the rental agreement applied to Romero's "holdover" tenancy. It is not clear what renewal term was agreed to.

The same morning, Chavez sent Romero an email terminating the rental agreement for nonpayment of rent and giving her until April 24, 2018, to vacate the house.

Romero moved out of the house on April 15, 2018. She sent Chavez two text messages that afternoon. The first, at about 2:15 p.m., stated:

> Your place has negative energy too. You should study fung shui before you build another house. You'll find keys on the counter. A lock was stolen so we replaced it (key is on your ring). The place is locked. Trash is on the curb. *You have a problem into the entry of the back bedroom. Tony shut all water off upstairs (just as we left it on when we moved out in April).* You can keep my last week's rent (you need it more than I do). You can also keep the $200 cleaning deposit.

(emphasis added). Romero sent Chavez another text message at 6:59 p.m. on the same day:

> Just to be sure there is no misunderstanding. You have a LEAK from the upstairs bathroom to the master bedroom hallway. Although Tony turned the valves off under the jacuzzi. Not sure why they were on as we made sure they were off when we left in April and never used it again.

Chavez was in Albuquerque when he got the first message. He drove to Ohkay Owingeh, arriving at the house at about 7:00 p.m. He found extensive water damage upstairs and downstairs. When Chavez investigated the jacuzzi, the water to it was turned off. When he turned the water on he discovered that one of the water lines had a quarter-inch slit, causing a significant leak.[5] Chavez immediately suspected that Romero and/or Lujan had cut the line and flooded the second floor in retaliation for being evicted.

Chavez filed suit against Romero and Lujan the next day, commencing *Greg Chavez v. Elaine Romero and Anthony Lujan*, no. M-43-CV-2018-00100, Rio Arriba County Magistrate Court (Española), State of New Mexico. The complaint alleged:

---

[5] As part of his job, Chavez often runs experiments to test the physical properties of certain materials, such as pipes and tubing. Chavez was qualified as an expert in state court and this Court concerning plumbing lines and water flow rates. In his opinion, the cut in the water line could not have happened through wear and tear or by accident. Also in his opinion, the line had been allowed to leak for about 16 hours before the water was turned off.

> Plaintiff evicted defendants from plaintiff's home; upon leaving plaintiff [sic] home, defendants intentionally cut water pipe causing severe water damage on second floor & ceiling/walls of the first floor of plaintiffs home.

It is not clear whether the complaint was brought under a contract theory (for breach of the rental agreement) or a tort theory (for intentional damage to property). Romero counterclaimed for harassment and defamation. The magistrate judge tried the matter on June 19, 2018. She dismissed the claim against Lujan but entered a judgment in Chavez's favor and against Romero for $9,273.88.

Romero appealed to the First Judicial District Court, State of New Mexico, commencing D-117-CV-2018-00363 (the "State Court Action"). District court judge Jason Lidyard held a trial de novo on the complaint and counterclaims on April 10, 2019. The parties litigated Chavez's claim as a breach of contract claim rather than a tort claim. At the close of trial, Judge Lidyard made oral findings and conclusions. He found for Chavez on a breach of contract theory. Judge Lidyard asked that the litigants prepare proposed written findings, conclusions, and judgment.

On April 16, 2019, before a final judgment was entered, Romero filed this bankruptcy case.[6] Romero did not file a notice of bankruptcy in the State Court Action.

On April 29, 2019, Judge Lidyard entered a final money judgment in favor of Chavez (the "Final Judgment") for $13,985.61, with interest accruing at 8.75%, as well as to-be-determined attorneys' fees and court costs per N.M.S.A. § 47-8-48(A).[7] The damages consisted of electric wiring repairs ($2,473.20); drywall/stucco repairs ($6,791.50); lost wages ($4,120.91); and the costs of having witnesses appear at the trial ($600). The form of the Final Judgment was drafted by Chavez's counsel.

---

[6] This is her second bankruptcy case. She filed a chapter 7 case in 2003 and received a discharge.
[7] The statute provides that if a suit is brought by a party to a rental agreement, the prevailing party shall be entitled to reasonable attorneys' fees and court costs.

The Final Judgment included 56 findings of fact and 20 conclusions of law. Judge Lidyard found:

> Romero's actions to cause Plaintiff to incur attorneys' fees to prosecute Plaintiff's claims in two trials, and to defend against Defendants' counter-claims in two trials, was done intentionally, willfully, wantonly and recklessly.

He also concluded that

> The damages to the Property caused by the leak in the PVC tube marked as Plaintiff's Exhibit 13 were not the result of reasonable wear and tear, but was instead the result of Defendant Romero's intentional, willful, wanton, and reckless conduct contrary to the terms of the Agreement.

On July 1, 2019, Chavez moved for relief from the automatic stay *nunc pro tunc* so the Final Judgment would become effective. Romero objected. The Court held a final hearing on the opposed motion on September 23, 2019, after which it entered an order granting the requested relief.

Chavez filed this proceeding on August 5, 2019, asking that Romero's debt be declared nondischargeable under § 523(a)(6).

Judge Lidyard's oral ruling at the end of the trial differs in some important respects from the Final Judgment. In his oral ruling, for example, he does not find that Romero acted willfully and wantonly. In addition, Judge Lidyard did not find that Romero cut the water line, only that she was liable because the damage happened while she had possession of the house. As discussed below, the differences do not affect the outcome of this proceeding.

## II. DISCUSSION

A. <u>Nondischargeability Standard under § 523(a)(6)</u>.

Section 523(a)(6) states:

(a) A discharge under section 727…of this title does not discharge an individual debtor from any debt—

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

To succeed on a § 523(a)(6) action, a creditor must show by a preponderance of the evidence that:

(1) he or his property sustained an injury;
(2) the injury was caused by the debtor;
(3) the debtor's actions were "willful;" and
(4) the debtor's actions were "malicious."

*Nelson v. Bolles*, 593 B.R. 832, 843 (Bankr. D.N.M. 2018); *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012).

It is an open question whether intentional breaches of contract can come within § 523(a)(6). *WLC Enterprises, Inc. v. Walter F. Rylant, III,* 594 B.R. 783, 788 (Bankr. D.N.M. 2018) (citing cases). "In the Tenth Circuit, the door is open to declaring certain intentional breach debts nondischargeable under § 523(a)(6)." *Id.*

Section 523(a)(6) requires that the injury be caused "by the debtor." The Court has rejected § 523(a)(6) liability under an imputed or vicarious liability theory. *In re Bruton*, 2010 WL 2737201, at *8 (Bankr. D.N.M.). This is the strong majority rule. *See, e.g., Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727 (Bankr. D.D.C. 1998) (to same effect); *Columbia Farms Dist., Inc v. Maltais (In re Maltais)*, 202 B.R. 807, 813 (Bankr. D. Mass. 1996) (same).

A debtor's actions must be both willful and malicious to deny the discharge of a debt under § 523(a)(6). *See, e.g., In re Longley*, 235 B.R. 651, 655 (10th Cir. BAP 1999). For an action to be willful, the debtor must intend the action *and* intend the harm that results. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.") (emphasis omitted). The debtor "must have wished to cause injury or at

least believed it was substantially certain to occur". *In re Englehart*, 2000 WL 1275614, at *3 (10th Cir.) (applying a subjective standard when determining a debtor's intent). Malice "requires an intentional, wrongful act, done without justification or excuse." *Deerman*, 482 B.R. at 369 n.18.

B.   The Preclusive Effect of the Final Judgment.

"As a general principle, state court judgments have preclusive effect on subsequent actions in federal court." *In re Griffin*, 2020 WL 996863, at *4 (Bankr. D.N.M.); *Allan v. McCurry*, 449 U.S. 90, 95 (1980); *In re Crespin*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016) ("In bankruptcy court, the general rule is that the court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")[8] (internal quotation omitted). It is indisputable that the Final Judgment establishes a valid claim against Romero. *See, e.g., In re Giron*, 610 B.R. 670, 674 (Bankr. D.N.M. 2019).

However, the validity of a debt is separate from whether it is dischargeable. *Crespin*, 551 B.R. at 898 ("*Brown v. Felsen* teaches that the claim preclusion effect of a state court judgment does not extend to the claim of dischargeability of a debt because whether a debt is excepted from the discharge is within the exclusive jurisdiction of the bankruptcy court and could not have been raised in the state court action.") (citing 442 U.S. 127, 135 (1979)).

If, and only if, the elements of a claim in state court directly mirror the elements required to find a debt nondischargeable, "then the claim preclusion effect of the [judgment] will determine the existence and amount of the non-dischargeable debt." *Crespin*, 551 B.R. at 899. Short of that, however, factual findings in state court can be granted narrower preclusive effect to bar relitigation of specific issues in bankruptcy court. *See Griffin*, 2020 WL 996863, at *4; *Giron*, 610 B.R. at 675. The bankruptcy court may utilize issue preclusion to bar "successive litigation of [1] *an issue*

---

[8] This principle is codified at 28 U.S.C. § 1738 and is commonly referred to as the Full Faith and Credit statute.

*of fact or law* [2] *actually litigated and resolved* in a valid court determination [3] *essential* to the prior judgment" *Griffin*, 2020 WL 996863, at *4 (quoting *In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014)) (emphasis retained).

The Court concludes that it is bound by Judge Lidyard's findings that water damage occurred at Chavez's house; that the damage was caused by a leak from a water line to Chavez's upstairs jacuzzi; that the line leaked because it had been cut with a sharp object; that water had been allowed to leak for approximately 16 hours; that Romero and Lujan were the only people at the property when the line was cut; and that the rental agreement terms applied to the holdover/renewal period.

Judge Lidyard's finding of willfulness differs from his oral ruling, raising the question whether it would be appropriate to treat the written finding as preclusive. However, as discussed below, the Court has sufficient evidence to make its own finding about willfulness.

Judge Lidyard made no finding about maliciousness, nor about whether the damage was caused by Romero for § 523(a)(6) purposes.

C. <u>Romero Damaged the House</u>.

The Court finds that Chavez met his burden of proving, through Judge Lidyard's findings and through trial evidence, that:

- Chavez checked the water to the jacuzzi after the Airbnb renters moved out on April 7, 2018, and made sure it was shut off;
- Romero moved back in on April 8, 2018;
- Romero or Lujan turned the water to the jacuzzi back on;
- Romero or Lujan cut one of the water lines to the Jacuzzi, causing a leak;
- Romero and Lujan let the water line leak for about 16 hours, causing substantial damage;
- Lujan then turned off the water to the jacuzzi, stopping the leak;
- Romero moved out after Lujan stopped the leak; and
- Romero notified Chavez about the leak through text messages, as part of an effort to hide the fact that she and Lujan caused the damage.

While it seems likely that Lujan cut the water line and turned on the water, the Court cannot know for sure. The identity of the line cutter/valve turner is not critical, however. Rather, it is enough to find, and the Court does so find, that both Romero and Lujan knew about cutting the line and turning on the water, and both approved of the actions. Romero and Lujan thus acted in concert to damage the house, whoever wielded the knife and/or turned on the water. This is sufficient for § 523(a)(6) purposes. In *In re Ostling*, 266 B.R. 661 (Bankr. E.D. Mich. 2001), for example, debtor's wife defrauded creditors by borrowing money and misrepresenting that wealthy relatives would cover her debts. Debtor knew of and reinforced the fraud by lying to creditors and backing up his wife in her lies. Creditors brought a nondischargeability suit against the debtor, alleging that he acted in concert with his wife to perpetrate the fraud. The court held the amount defrauded nondischargeable as to the debtor under §523(a)(6) because he "knew that injury to plaintiffs was 'substantially certain to occur as a result of his behavior.'" 266 B.R. at 668. *See also In re Phillips*, 434 B.R. 475, 484 (6th Cir. BAP 2010) (debt of debtor husband held dischargeable under § 523(a)(6) because there was "no evidence linking [husband] to the false accusation of rape, *or that he colluded with* [*wife*] *to abuse the legal process*") (emphasis added); *In re Thompson*, 2016 WL 1055582 (Bankr. E.D. Mich.) (fact issues concerning whether debtor conspired with her boss to misappropriate client funds precluded summary judgment for debtor on § 523(a)(6) grounds); *see generally* Restatement (Second) of Torts § 877 cmt. a (Am. Law. Inst. 1979) ("One who orders an act to be done is liable for its consequences as he would be for his own personal conduct if he has or should have knowledge of the conditions under which it is to be done."). Because Romero and Lujan acted together to damage the house, they are equally responsible for § 523(a)(6) purposes.

D.  <u>Romero's Actions Were Willful</u>.

The Court finds that Romero and Lujan, acting in concert, intended to cut the water line and intended to damage the house by doing so. The "willfulness" requirement of § 523(a)(6) therefore has been satisfied. *See Kawaauhau v. Geiger*, 523 U.S. at 61. They did not cut the water line by mistake. Having cut the water line on purpose, there could only be one reason for doing so—to damage the house by the resulting leak.

E.      Romero's Actions Were Malicious.

Romero's damage to the house was wrongful. She intended the damage that occurred. Her actions were without any justification or excuse. The damage therefore was malicious. *See Deerman*, 482 B.R. at 369 n.18.

F.      Chavez Was Damaged by Romero's Willful and Malicious Injury to the House.

"The non-dischargeable debt is the amount of damages arising from the non-dischargeable conduct." *Crespin*, 551 B.R. at 902 (citing *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998)). However, "the claim preclusion effect of the [judgment] will determine the existence and amount of the non-dischargeable debt" if "the [judgment] is based only on the same series of connected transactions underlying the claim of non-dischargeability." *Id.* at 899.

Here, the state court awarded Chavez damages for breach of the rental agreement. As set out above, the breach was Romero's willful and malicious damage to the house. In such a circumstance, it is reasonable to hold the breach of contact damages awarded by the state court nondischargeable.[9] While contract damages should only rarely be held nondischargeable under § 523(a)(6), *see Rylant,* 594 B.R. at 789, it is reasonable to do so when the action that breached the contract was an intentional tort that comes within § 523(a)(6).

### III.     CONCLUSION

---

[9] Under a tort theory, the damages would be the cost of repairing the electrical wiring and the drywall and stucco, i.e., $9,264.70, plus any punitive damages awarded.

When the landlord/tenant relationship between Chavez and Romero soured and Chavez gave Romero a 14-day notice to vacate the house, Romero retaliated. Working in concert with Lujan, she cut the water line to the jacuzzi and let the water leak for 16 hours, causing substantial damage. Romero's actions were willful and malicious. The $13,985.61 in damages awarded by Judge Lidyard is nondischargeable. The Court will enter a separate judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 11, 2020

Copies to: Counsel of record

Elaine Romero
P.O. Box 2172
El Prado, NM 87529